UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Yakov Magdalasov,<br><br>                             Plaintiff,<br><br>-against-<br><br>ByteDance Inc., TikTok Inc., and Maria Malvar,<br>                             Defendants. | 25-cv-5999 (AS)<br>25-cv-4243 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

   This opinion resolves two suits that have proceeded along parallel tracks, one a half-step behind the other. Pro se plaintiff Yakov Magdalasov first sued his former employer ByteDance in state court. ByteDance removed that case based on diversity and federal-question jurisdiction. 25-cv-4243, Dkt. 2. The Court denied Magdalasov's motion to remand back to state court, holding that there was subject-matter jurisdiction based on diversity. *Id.*, Dkt. 33. It then denied his motion for preliminary injunctive relief in the same order. *Id.* Meanwhile, just a few days before the Court issued its order, Magdalasov filed another claim in state court. It was based on the same events as his first suit. Again, ByteDance removed to federal court. And again, Magdalasov moved to remand back to state court. In the meantime, ByteDance filed a motion to dismiss some non-arbitrable claims and to compel arbitration on the rest in both suits.

   The first order of business is catching Magdalasov's second case up to his first: This court has jurisdiction and his motion to remand his second case is denied. Now that it's caught up, the Court can deal with the motions to dismiss and compel arbitration in both cases at the same time. They're granted. Magdalasov's claims that arise under ERISA are dismissed and the rest must go to arbitration. The motion for discovery is denied. In the meantime, both cases are stayed.

   Before proceeding, a word of caution. Magdalasov's briefing often cites cases that don't exist, or that do exist but have quite different reporters than those provided. The substance of these cases often doesn't resemble how they're characterized. At other times, Magdalasov's briefing misrepresents basic facts about the docket and what has been filed so far. The Court has undertaken an effort to identify all the cases that Magdalasov has cited. Sometimes that involved identifying cases with similar captions but different citations. But other times, the Court couldn't identify any closely analogous case. ByteDance suggests that this is all the result of AI hallucination, and the Court agrees that this is likely.

   Many litigants may face the temptation to draft briefs with the help of AI. And it's possible, even likely, that it can be a helpful tool to achieve better, fairer outcomes in court for pro se parties. But "even pro se parties have an obligation to act honestly and in good faith when conducting business before the courts." *Kilkenny v. L. Office of Cushner & Garvey, L.L.P.*, 2012 WL 1638326,

at *5 (S.D.N.Y. May 8, 2012). And while the use of AI may often be helpful, fake citations and misrepresentations undermine a party's credibility and often backfire.

### I. The motion for remand is denied

The Court addresses the motion to remand first "because the remand motion challenges the Court's jurisdiction to hear this case." *Shorts v. Cedars Bus. Servs., LLC*, 767 F. Supp. 3d 96, 102 (S.D.N.Y. 2025) (quoting *Schultz v. Tribune ND, Inc.*, 754 F. Supp. 2d 550, 555 n.6 (E.D.N.Y. 2010)). "If the Court does not have jurisdiction, it does not have the power to decide" other motions. *Id.* (quoting *Schultz*, 754 F. Supp. 2d at 555 n.6). The Court notes that Magdalasov's "state court complaint was filed pro se, and must be 'liberally construed' and 'held to less stringent standards than formal pleadings drafted by lawyers.'" *Moskovits v. Grigsby*, 2020 WL 3057754, at *3 (S.D.N.Y. June 9, 2020) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008)). "[P]leadings of a pro se party should be read 'to raise the strongest arguments that they suggest.'" *Id.* (quoting *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010)). And the Court "evaluate[s] [ByteDance's] right to remove [the] case to federal court at the time the removal notice [was] filed," based on the allegations in the state-court complaint. *Vera v. Saks & Co.*, 335 F.3d 109, 116 n.2 (2d Cir. 2003); *see also In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98,100–01 (2d Cir. 2015) ("After proper removal to federal court, post-removal amendments generally do not destroy statutory subject-matter jurisdiction.").

Like the last time around, there's diversity jurisdiction, so the Court doesn't need to address whether there's a federal question. The Court starts its analysis where Magdalasov's motion for remand differs this time. Last time, the Court held that there was diversity jurisdiction because Magdalasov claims that he is a citizen of Russia, "ByteDance is a citizen of Delaware and California," and the amount in controversy was "clearly worth more than $75,000 to Magdalasov." 25-cv-4243, Dkt. 33 at 2. This time, Magdalasov named two more defendants: TikTok and a ByteDance employee named Maria Malvar. That forms the basis of all his new arguments about diversity jurisdiction. Because there's a New York defendant, he says, the forum-defendant rule bars removal. 24-cv-5999, Dkt. 6 at 4. He also reiterates his old argument that the amount in controversy is less than $75,000.

These new defendants and arguments lead to the same result. Complete diversity of defendants is still intact. TikTok's principal place of business is California and it's organized under California law. 25-cv-5999, Dkt. 1 ¶ 8; *Wachovia Bank Nat'l Ass'n v. Schmidt*, 546 U.S. 303, 306 (2006). Magdalasov doesn't contest that. Instead, he argues that ByteDance can't remove the action because Malvar, a New York citizen, is a defendant. *See* 28 U.S.C. § 1441(b)(2). The problem for Magdalasov is that the action was removed before Malvar was served, and "Section 1441(b)(2) is inapplicable until a home-state defendant has been served [in state court] in accordance with state law." *Gibbons v. Bristol-Meyers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019).

Magdalasov's arguments to the contrary fail. First, he cites a series of district court cases, some in-circuit and some out-of-circuit, to argue that a remand is warranted when service of an in-state defendant comes shortly after removal. *See Confer v. Bristol-Meyers Squibb Co.* 61 F. Supp.

2

3d 305 (S.D.N.Y. 2014); *Hensley v. Forest Pharms., Inc.*, 21 F. Supp. 3d 1030 (E.D. Mo. 2014); *McAboy v. Intel Corp.*, 2022 WL 1519081 (D. Or. May 13, 2022) (addressing a different setup in which a defendant who was not served is the one who moves for removal). The idea is that "[t]he practice of snap removals to bypass the forum defendant rule has been criticized." 25-cv-5999, Dkt. 6 at 4. But that doesn't help Magdalasov because the Second Circuit has already addressed and rejected this argument. In *Gibbons*, it held that the language of Section 1441(b)(2) explicitly permits snap removal. 919 F.3d at 706–07.

Next, Magdalasov invokes Rule 11(a) of the Federal Rules of Civil Procedure and SDNY Local Rule 1.4 to argue that ByteDance couldn't file a notice of removal without any appearances entered for TikTok or for Malvar. But neither rule says anything of the sort. Rule 11(a) requires only that pleadings and motions "be signed by at least one attorney of record in the attorney's name," and the notice of removal was signed. Dkt. 1 at 9. And, on this count, Local Rule 1.4 says only that "[a]n attorney who files a case initiating document, such as a … notice of removal … need not file a separate notice of appearance; such an attorney shall be deemed to have entered a notice of appearance on behalf of the party or parties on whose behalf the filing was made." Civil Local Rule 1.4.

That just leaves Magdalasov's rehashed claim that he fails to meet the more-than $75,000 amount-in-controversy requirement for federal court. 28 U.S.C. § 1332(a). He argues that the amount in controversy is $67,000, the amount he was paid *before* he was fired. Dkt. 6 at 2–3. But he wants injunctive relief to get his job *back* and he wants damages on top of that. Dkt. 1-1 ¶¶ 119, 127, 138. At that job he was paid $202,000 year plus a bonus and some stock options. 25-cv-4243, Dkt. 33 at 2. So the Court reaches the same conclusion as before about the amount in controversy requirement: It's met. And that's the case even though, like last time, Magdalasov tries to stipulate that he seeks less than that. *See Yong Qin Luo v. Miken*, 625 F.3d 772, 776 (2d Cir. 2010) ("[A] plaintiff cannot seek to deprive a federal court of jurisdiction by reducing her demand to $75,000 or less once the jurisdictional threshold has been satisfied.").

## II.   To the extent that Magdalasov brought claims under ERISA, they're dismissed

At first, Magdalasov sought relief under ERISA. 25-cv-4243, Dkt. 5. He then amended his complaint to remove his ERISA claims. *Id.*, Dkt. 9. And in his second case he doesn't mention ERISA at all. 25-cv-5999, Dkt. 1-1. ByteDance initially argued that the claims related to its benefits plan still arise under ERISA, establishing federal-question jurisdiction. But, since then, Magdalasov has disclaimed any benefits claims arising under ERISA, arguing instead that he's already brought those separately in another lawsuit in New Jersey. He says that he wants relief only for his employment claims, and only as is available under the New York State Human Rights Law. 25-cv-5999, Dkt. 22 at 12 ("This action … asserts only four state-law causes of action grounded in disability discrimination, retaliation, and related statutory rights under the New York State Human Rights Law."). Because Magdalasov now disavows any claims about benefits arising under ERISA, those are dismissed.

**III.    Both cases must go to an arbitrator**

Magdalasov's remaining claims are bound for arbitration. A dispute may be arbitrable if: (1) the parties formed a contract to arbitrate, and (2) the scope of that agreement covers the claims at issue. *Holick v. Cellular Sales, LLC*, 802 F.3d 391, 394 (2d Cir. 2015). Even if those conditions are met, not all disputes go to arbitration. The agreement must also be enforceable, and "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements." *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see* 9 U.S.C. § 2. Like the initial question of contract formation, these defenses are evaluated under state law. *First Options, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 250 (S.D.N.Y. 2005).

"In deciding motions to compel, courts apply a standard similar to that applicable for a motion for summary judgment." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (quotation marks omitted). That requires the Court to "consider all relevant admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (quotation marks omitted). The party moving to compel arbitration "bears an initial burden of demonstrating that an agreement to arbitrate was made." *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (quotation marks omitted).

### A.    There's an agreement that covers these disputes

#### 1.    There's an agreement to arbitrate

Magdalasov's employment contract has an arbitration agreement. That agreement says that "any dispute arising out of or related to [Magdalasov's] ... application or selection for employment, employment, and/or termination of employment … will be decided by a single arbitrator through final and binding arbitration and not by way of a court or jury trial." 25-cv-5999, Dkt. 22-2 at 4. Magdalasov doesn't contest that he signed this contract. He instead levies a barrage of arguments against the contract's coherence. The theme is that it's a convoluted mess with no legal force. Each argument fails.

*First*, there's no tension between the arbitration provisions. Magdalasov argues that the agreement to arbitrate is "scattered across multiple onboarding documents, each with different scope, language, and intent." 25-cv-5999, Dkt. 22 at 23. That, he says, means that there was no real agreement to arbitrate. The agreements in question are his written offer letter, the employee handbook, and the Confidentiality, Investment Assignment, and Arbitration Agreement (CIAA). And his argument is that the handbook doesn't reference arbitration, and the two documents that do (his offer letter and the CIAA) contradict each other. Off the bat, the relevance of the employee handbook is minimal. Because it doesn't mention the forum for disputes one way or the other, it doesn't create any ambiguity or tension with any other document. That means that Magdalasov's argument rests on any contradiction between the offer letter and the CIAA.

The offer letter incorporates the Mutual Agreement to Arbitrate (MAA), which applies to "any dispute arising out of or related to Employee's … employment, and/or termination of employment." Dkt. 22-2 at 4. Magdalasov says that this conflicts with the CIAA, which applies only to disputes "arising under this agreement." But that's not what it says. The CIAA says that "[a]ny disputes or claims arising out of or relating to or resulting from this agreement shall be resolved through arbitration, as set forth in the parties' Mutual Agreement to Arbitrate." Dkt. 22-2 at 28. So there's no conflict at all.

*Second*, there are no "conflicting supremacy provisions." Magdalasov argues that these terms "render it impossible to determine which arbitration clause—if any—should govern." Dkt. 22 at 25. But the language of the agreements is clear. The CIAA, which governs confidentiality and nondisclosure, has an integration clause. That's what Magdalasov says creates a problem. But that clause applies only to "the subject matter herein." Dkt. 22-2 at 29. Magdalasov doesn't explain how this clause, in a confidentiality agreement, interacts at all with the *other* contracts that govern his employment more generally. All agreements point in the exact same direction: arbitration. And they do so under the terms of the MAA.

*Third*, assorted language in the employee handbook doesn't render his contract ambiguous. The handbook states that it "supersedes and replaces any and all prior Employee Handbooks and any inconsistent verbal or written policy statements." Dkt. 22-2 at 37. Magdalasov says that this could be construed to "override separate executed agreements such as the CIAA or the offer letter." Dkt. 22 at 25. But how? The handbook's plain text says nothing about those agreements and refers only to *policies*. He gets a bit closer to identifying a conflict by pointing to language that says that "[n]othing in this Handbook or any other Company policy or document limits or prohibits employees from engaging … in any Protected Activity," defined as "filing a charge, complaint, or report …with state, federal, local, or other government agencies." Dkt. 22-2 at 38. But this still runs into problems. He neither argues that an employment contract is a "document" under this language, nor that filing a lawsuit in court constitutes filing a charge or complaint with a government *agency*. That language is more naturally read to contemplate a charge with an agency like the EEOC. Indeed, the Handbook provides some examples: the SEC, OSHA, the EEOC, and the NLRB. *Id.*

*Fourth*, that there may be "missing attachments" or separate agreements doesn't change the analysis. Magdalasov argues that, because his offer letter refers to an "attachment A" which was allegedly missing and provided separately, that "further complicates the already murky onboarding documents and evidences a lack of cohesive policy." Dkt. 22 at 27. But he cites no case supporting that proposition, nor does he explain *how* that creates any real tension.

*Fifth*, the lack of negotiation over the contract doesn't mean that there was a "[l]ack of meeting of the minds." Dkt. 22 at 27. Magdalasov says that he signed using DocuSign "with no opportunity to ask questions or seek clarification" and that "[n]o explanation or training was provided regarding arbitration." *Id.* at 28. But Magdalasov could have asked questions or pushed back. He chose not to. Instead, as he admits, he signed the agreements on the same night that they were sent to him; he didn't even use the three-day period ByteDance gave him to read them over and consider them. Dkt. 22 at 29. The MAA spelled out many of the arbitration procedures that JAMS (the

selected arbitrator) would use. Dkt. 22-2 at 5–6. "This Court will not void a valid agreement based on Plaintiff's failure to read the terms and conditions that were presented to" him. *Edwards v. Macy's Inc.*, 2015 WL 4104718, at *8 (S.D.N.Y. Jun. 30, 2015).

### 2. The arbitration agreement covers these disputes

The arbitration clause applies to "any dispute, past, present, or future, that Company might have against you or that you may have against (1) Company; [or] (2) its officers, directors, principals, shareholders, members, owners, employees, or agents." Dkt. 22-2 at 4. Magdalasov doesn't contest that his dispute is the kind that's covered; he argues some *defendants* aren't covered. Specifically, he alleges that TikTok (ByteDance's subsidiary) and Malvar aren't parties to the agreement and so cannot compel him to arbitrate. And to support that, he says that the Second Circuit has already held that non-parties cannot enforce ByteDance's arbitration agreement. Dkt. 22 at 15–16 (citing *Connel v. ByteDance, Inc.*, No. 24-1886 (2d Cir. Jul. 15, 2025)).

The first problem for Magdalasov is that the *Connel* case doesn't exist. The docket number he provides instead points to a different Second Circuit case; and, while there's a case in the Northern District of California with that same caption, it didn't hold that "non-signatories could not compel arbitration" as Magdalasov claims. Dkt. 22 at 16; *see Connel v. ByteDance, Inc.*, 2025 WL 1828472 (N.D. Cal. Jul. 1, 2025). The second problem is that the text of the agreement to arbitrate says that "[e]ach and all of the entities or individuals listed … can enforce this Agreement." Dkt. 22-2 at 4. So TikTok and Malvar are "express third-party beneficiar[ies] of the Arbitration Agreement that may enforce its terms." *McCants v. Team Elec.*, 2021 WL 653122, at *5 (S.D.N.Y. Feb. 19, 2021); *accord Gerszberg v. Li & Fung (Trading) Ltd.*, 215 F. Supp. 3d 282, 288 (S.D.N.Y. 2016) ("It is settled that an arbitration agreement may be enforced in favor of third-party beneficiaries."). So, absent some reason that the agreement isn't enforceable here, it should compel arbitration.

### B. ByteDance didn't waive its right to arbitrate

The right to arbitrate must be exercised to have effect—and it can be waived if it isn't. *La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). Two factors guide the Court's inquiry into waiver. First, "the time elapsed from when litigation was commenced until the request for arbitration." *Id.* Second, "the amount of litigation to date, including motion practice and discovery." *Id.*; *see also Morgan v. Sundance*, 596 U.S. 411, 419 (2022) (explaining that no additional prejudice must be shown).

Both point toward no waiver here. ByteDance moved to compel arbitration in both cases within a month of removal. 25-cv-4243, Dkt. 20; 25-cv-5999, Dkt. 20; *see also Diaz-Roa v. Hermes Law, P.C.*, 757 F. Supp. 3d 498, 529 (S.D.N.Y. 2024) ("Courts in this District have found two-month delays 'insubstantial' for the purposes of assessing the time elapsed." (collecting cases)). Though Magdalasov argues that more time has passed since he filed an initial internal complaint, the clock starts running "when litigation was commenced," *La. Stadium & Exposition Dist.*, 626 F.3d at 159, and the MAA applies only to "the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration." Dkt. 22-2 at 4. Next, ByteDance filed its

6

motions in both cases before any discovery and as its first substantive motions, so that factor also points away from waiver.

Finally, although Magdalasov need not show that he was prejudiced, the Court nonetheless notes that no prejudice could have existed here. Magdalasov argues that he had to first brief a TRO in one of his cases, which prejudiced him by costing him time and by giving his opponents "advance disclosure" of his legal theories. But neither of these is unique to arbitration—as Magdalasov himself argues, the MAA doesn't apply to applications "for temporary or preliminary injunctive relief." Dkt. 22-2 at 5. So whether this proceeding advances in federal court or in arbitration, the results are the same: either way, he would have spent his time on his motion and revealed some of his legal theories.

### C. Whether the agreement is enforceable is for an arbitrator to decide

The Court doesn't have jurisdiction to assess whether the arbitration agreement is enforceable. That's because the agreement has a delegation clause that says that "the Arbitrator, and not any court, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, or waiver of this agreement." *Id.* When there's "clear and unmistakable evidence" that the question of enforceability was delegated to an arbitrator the Court's inquiry ends there unless it's unenforceable for some other reason. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 72 (2019) (quotation marks omitted). A litigant may challenge the enforceability of a delegation clause, but he must do so specifically—that is, by doing more than "challeng[ing] only the validity of the contract as a whole." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 72 (2010). Magdalasov makes four arguments against the application of the delegation clause. Again, all fail.

*First*, the delegation clause is "clear and unmistakable." *Id.* Magdalasov argues that the clause is unclear because it comes in the middle of a paragraph (and isn't a standalone paragraph) and because it "fails to explicitly state that an arbitrator—and only an arbitrator—has the *exclusive* authority to decide gateway questions." 25-cv-5999, Dkt. 22 at 34. But he cites no case for the proposition that a delegation clause cannot appear in a paragraph. *Cf. Application of Whitehaven S.F., LLC v. Spangler*, 45 F. Supp. 3d 333, 351 (S.D.N.Y. 2014) ("Under New York law, even the lack of legal advice is not sufficient to establish procedural unconscionability of the contract, and the fine print of the clauses does not make them unconscionable as long as those clauses have the same font size and color with other clauses."). And contrary to Magdalasov's assertion, the clause explicitly grants "the Arbitrator, and not any court" the "exclusive authority to resolve" these disputes. *Id.*, Dkt. 22-2 at 4. This is exactly the kind of language that the Supreme Court has found clear and unmistakable. *Rent-A-Ctr.*, 561 U.S. at 69–70.

*Second*, the delegation clause isn't unconscionable. The great bulk of Magdalasov's arguments about unconscionability concern the "contract as a whole," not the "delegation provision specifically." *Id.* at 72; *compare* 25-cv-5999, Dkt. 22 at 28–34 *with id.* at 35. His arguments against the delegation clause are that: (1) it's in a contract of adhesion (procedural unconscionability); (2)

7

there was unequal bargaining power (procedural unconscionability); (3) it imposes costs on employees to deter them from bringing suits (substantive unconscionability); and (4) the employer pays the arbitration fees, creating a conflict of interest (substantive unconscionability). But: (1) this is an employment contract and "it is well accepted under New York law that it is not unconscionable to be bound by an arbitration agreement in the course of securing employment," *Armstead v. Starbucks Corp.*, 2017 WL 5593519, at *6 (S.D.N.Y. Nov. 17, 2017) (quotation marks omitted); (2) that's true even when "there is inequality in bargaining power between an employer and a potential employee," *id.* (quotations marks omitted); (3) "[t]he mere assertion that the costs associated with arbitration would be excessive does not alone render an arbitration agreement unenforceable," *Valdes v. Swift Transp. Co., Inc.*, 292 F. Supp. 2d 524, 534 (S.D.N.Y. 2003); and (4) without any specific allegations of bias, the Court "decline[s] to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious, and impartial arbitrators." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 634 (1985).

*Third*, the delegation clause doesn't violate any public policy. Magdalasov's arguments against the clause are just arguments against arbitration writ large—chiefly that it evades judicial review, especially of "critical statutory protections." But arbitration doesn't evade judicial review; the Court retains jurisdiction while a case is stayed during arbitration and must confirm any arbitration award to convert it into a final judgment. 9 U.S.C. § 9. Besides, the FAA was enacted to put arbitration agreements "on equal footing with all other contracts." *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 581 U.S. 246, 248 (2017) (quotation marks omitted). The basic function of arbitration can't be a policy justification for voiding an agreement to arbitrate. Otherwise, Magdalasov's additional policy arguments repackage his unconscionability arguments into policy arguments and fail for the reasons above.

*Fourth*, the scope of the delegation clause isn't limited to only some kinds of arguments. It grants the arbitrator "exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, or waiver of [the] agreement." That's about as comprehensive as it gets. Magdalasov argues that it shouldn't extend to challenges that are made on public-policy grounds, but he provides no authority for that. And though the Court agrees with him that it can't apply to "statutory rights that are non-arbitrable as a matter of law," he has explicitly disclaimed any statutory causes of action that are non-arbitrable.

## IV.  Discovery isn't necessary to resolve this case

Magdalasov argues that discovery is needed to figure out whether he must arbitrate. "[W]hen it is apparent—on the face of the complaint and documents properly incorporated therein—that claims are subject to arbitration, a district court may dismiss in favor of arbitration without the delay of discovery." *Nicosia*, 834 F.3d at 231.[1] Magdalasov argues that there's ambiguity about

---

[1] Magdalasov offers a different legal standard, which is that "discovery on the question of arbitrability is appropriate." Dkt. 23 at 4 (quoting *In re Palm Habor Homes, Inc.*, 195 S.W. 3d 672, 678 (Tex. 2006)). But this quotation doesn't appear in the cited case. He also cites *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352,

waiver, about whether he agreed to arbitrate, and about whether the agreement is procedurally unconscionable. But as the Court has already discussed, none of these is ambiguous.

As to waiver, Magdalasov relies on misrepresented facts. He says that "Defendants waived their right to arbitrate by first filing a substantive motion to dismiss predicated on a bad-faith ERISA preemption argument, waiting months to raise the issue of arbitration, and availing themselves of the litigation process before changing tactics." Dkt. 23 at 5. So Magdalasov wants discovery into ByteDance's litigation strategy to show that this was deliberate gamesmanship (and that, as a result, ByteDance waived the right to arbitrate). But none of that happened. A look at the docket tells a very different story. Within a month of removal from state court, ByteDance filed (at the same time) a motion to dismiss and a motion to compel arbitration. 25-cv-5999, Dkt. 20. Those are the motions currently before the Court. So it's unclear what additional information discovery could produce that would change the waiver analysis. And as to contract formation and unconscionability, Magdalasov raises no new argument that the Court hasn't already addressed. *See* 25-cv-5999, Dkt. 23 at 6–7 (arguing that the agreements conflict and that he was pressured into signing the contract).

The Court confronts a pellucid record and sees no need for any additional discovery.

## CONCLUSION

Magdalasov's motions to remand are denied. Defendants' motions to dismiss the ERISA claims and to compel arbitration on the others are granted. The Clerk of Court is directed to terminate Dkts. 5, 10 (as moot), 19, 20, and 23 in 25-cv-5999, and to terminate Dkt. 20 in 25-cv-4243. The Clerk is also directed to stay both cases.

SO ORDERED.

Dated: November 24, 2025
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge

---

358 (2d Cir. 1995), for the proposition that "district courts can and should allow discovery on arbitrability where the facts are in dispute," but that case says no such thing. Of course, when disputed facts are essential to the legal analysis, discovery is appropriate; but that isn't the case here.